IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Gary L. Wise, ) | |
| ) | Civil Action No. 6:04-1752-MJP-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Eileen Judson Palmer, NP at Lieber ) | |
| Medical Facility; Jasmen Morales, a/k/a ) | |
| Yasminnie Morales, LPN at Lieber ) | |
| Medical Facility; Ryan Hutchinson, ) | |
| Doctor and Head Physician at Lieber ) | |
| Medical Facility; Martha Gedert, a/k/a ) | |
| Marti Gederts, Director and Health ) | |
| Care Administrator; Glenn Alewine, ) | |
| M.D.; Jamil A. El Shami, NP, Individ- ) | |
| ually and in their Official Capacities, ) | |
| ) | |
| Defendants. ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the court on the defendants' motion for summary judgment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff filed his complaint on June 8, 2004, alleging that the defendants violated his constitutional rights. On September 10, 2004, the defendants filed a motion for summary judgment. By order filed on September 14, 2004, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment

dismissal procedure and the possible consequences if he failed to adequately respond to the motion. When the plaintiff did not respond within the appropriate time period, the court issued an order on November 9, 2004, instructing him that his complaint would be dismissed for failure to prosecute if he did not file his response to the defendants' motion for summary judgment within 20 days from the date of the order. As his response, the plaintiff filed a motion for summary judgment on December 2, 2004.

## APPLICABLE LAW

*Motion for Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. V. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in her pleadings; rather, she must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiffs position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

This action is premised on the plaintiff's incarceration at Lieber Correctional Institution (LCI). He has since been transferred to Turbeville Correctional Institution.

The plaintiff's claims are set forth in a five-page document, in which he alleges that:

> (a) the defendants subjected him to cruel and unusual punishment by depriving him of necessary medical treatment;
>
> (b) the defendants denied him equal treatment and access to medical treatment;

    (c) the defendants conspired to deprive him of his constitutional rights; and

    (d) the defendants treated him with deliberate indifference for his medical needs by denying him medical treatment.

With his complaint, the plaintiff includes 15 pages of attachments, including:

    (a) a request to staff member to be moved because of cigarette smoke;

    (b) a request to staff member and two inmate grievance forms complaining of chest pains from keloids where he had an incision;

    (c) a request to staff member and an inmate grievance form complaining that he had not received pain medicine on time; and

    (d) an inmate grievance form complaining that a teddy bear he uses for chest pain was removed from his room.

### *Defendants Morales and Hutchison*

The plaintiff names Jasmen Morales and Ryan Hutchison as defendants in the caption of the complaint. He identifies Morales as an LPN at LCI and Hutchison as the "Doctor and Head Physician" at LCI. However, affidavits of service were returned unexecuted for defendants Morales and Hutchison. More than 120 days has passed since the summons for these defendants were issued on June 29, 2004. Thus, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the complaint should be dismissed against defendants Morales and Hutchison.

### *Defendants Alewine and El-Shami*

The plaintiff names NFN Alewine and Jamil A. El-Shami as a defendant in the caption of the complaint. He identifies Alewine simply as "Doctor" and El-Shami simply as "NP." The defendants identify Alewine as the Medical Director for the South Carolina

4

Department of Corrections (SCDC) and El-Shami as a nurse practitioner employed by SCDC at Kirkland Correctional Institution Reception and Evaluation Center.  The plaintiff seeks relief from the defendants in their official and individual capacities.  He does not allege, however, that either Alewine or El-Shami was personally involved in or had direct responsibility for violation of his constitutional rights.  Indeed, he makes no further allegation against either defendant.  No mention of either defendant is made in the attachments to his complaint.  Accordingly, the complaint should be dismissed against defendants Alewine and El-Shami.

### *Defendant Gedert*

The plaintiff names Martha Gedert as a defendant in the caption of the complaint.  He identifies Gedert as "Medical Director and Health Care Administrator."  By affidavit, Gedert explains that she worked at LCI as a registered nurse and as the administrative head of the medical unit at LCI.  The plaintiff seeks relief from the defendants in their official and individual capacities, but he does not allege that Gedert was personally involved in or had direct responsibility for violation of his constitutional rights.  In an inmate grievance form dated August 15, 2002, and attached to the complaint, the plaintiff alleges that he was refused medical help by Gedert.  This grievance was returned to the plaintiff unprocessed because the plaintiff had not attempted informal resolution.  However, by affidavit, Gedert testified that she was not scheduled to work on August 15, 2002, and that she never refused the plaintiff medical care.

### *Defendant Palmer*

The plaintiff names Eileen Judson Palmer as a defendant in the caption of the complaint.  He identifies Palmer as a nurse practitioner at LCI.  Again, the plaintiff seeks relief from the defendants in their official and individual capacities.  He does not allege,

however, that Palmer was personally involved in or had direct responsibility for violation of his constitutional rights. References to Palmer (also known as Judson) do appear in the attachments to the complaint, primarily because the plaintiff directed several requests to staff member to her attention as "head nurse."

According to Palmer, she first treated the plaintiff on July 25, 2002, when she ordered a low-fat diet in response to his previously documented gallbladder disease. She was not involved, however, when the plaintiff returned to the medical unit later that same day with chest pain but normal vital signs and no signs of distress. His EKG was normal, and he was discharged to his dormitory after a one-hour observation indicated he felt better.

The plaintiff sought medical treatment for abdominal discomfort on August 5, 2002. Palmer noted that an ultrasound of his gallbladder revealed gallstones, and all other tests were reported as normal. She assessed the plaintiff with gallbladder disease and prescribed him antacid, as well as shampoo and topical medication for his skin and scalp problems.

On August 15, 2002, the plaintiff had an outside surgical consultation regarding his gallstones, heartburn, and gastroesophageal reflux disease. Based on this assessment, the plaintiff was referred to a gastrointestinal specialist for esophagoduodenoscopy (EGD) to evaluate his stomach and esophagus, and he was advised to return to the clinic in two months to re-evaluate his gallstones. The plaintiff also received a prescription for Zantac, an antacid.

On August 16, 2002, as she was leaving work, Palmer was asked to return to the medical unit to evaluate the plaintiff who was complaining of chest pain and elevated pulse and blood pressure. In private practice, Palmer's specialty was the care of cardiothoracic surgery patients. By her order, he was given aspirin and nitroglycerine, as well as oxygen, immediately. Recognizing that the plaintiff needed emergency care at a hospital, Palmer arranged for him to be transported from LCI to Trident Hospital. At Trident,

the plaintiff received bypass surgery. After he returned to LCI, Palmer performed a six-week checkup for the plaintiff. His vital signs were normal, his incision was healing well, his vein harvesting sites were healing well, he was stable and in satisfactory condition. Palmer ordered that he follow up with her in one week, continue his prescribed medications, and return to his dormitory but with a bottom bunk. She cleared him for walking but no heavy lifting. She prescribed a daily shower and TED hose to improve circulation in his legs. She also prescribed a low-salt diet in addition to the prior low-fat order.

On September 17, 2002, the plaintiff had a chest x-ray, and on September 24, 2002, he was evaluated at the GI clinic. The impression resulting from the consultation was probable GERD and asymptomatic gallstones. On October 7, 2002, Palmer renewed his prescription for Pravachol, a cholesterol-lowering drug. On October 11, 2002, the plaintiff was seen in the surgical clinic with an impression of aymptomatic gallstones. Palmer prescribed the plaintiff Ultram for pain management on October 26, 2002. On November 26, 2002, Palmer sawy the plaintiff for chest pain. His blood pressure was elevated, but his vital signs were otherwise normal, and he was showing no signs of cardiac problems. Palmer examined his incisions and found they had healed well. An EKG was within normal limits. Palmer diagnosed mammary artery fascitis, a normal complaint after coronary artery bypass graft surgery. Since then, Palmer saw him for this fascitis and prescribed medications for pain, lupus, and cholesterol management. An EGD was normal. According to Palmer, the plaintiff has been seen in the medical unit every time he has appeared seeking medical attention.

### *Medical Attention*

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide

essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

The plaintiff contends that the defendants violated his constitutional rights by denying him adequate medical care and treatment. His complaint does not specify what medical treatment was denied, by whom it was denied, or when it was denied. Attachments to his complaint, however, indicate that the plaintiff lodged a variety of complaints regarding his medical care and health between his bypass surgery and the date he filed suit.

In an inmate grievance form dated December 22, 2003, the plaintiff complained that a correctional officer removed a teddy bear from his cell. His grievance was returned unprocessed for failing to attempt informal resolution. Nevertheless, he does not allege that any of the defendants were responsible for removing the teddy bear. According to Palmer, cardiothoracic patients often are provided with a teddy bear post-surgically to hold against their chest when coughing to cushion the chest and assist in preventing pain. A regular bed pillow, however, can serve the same purpose. Generally, the teddy bear is used only during the first two weeks after surgery. Although teddy bears are contraband which inmates are not allowed to possess, the plaintiff did have a regular bed pillow in his room at LCI.

In a request to staff member attached to the complaint dated April 25, 2004, the plaintiff asked to move to an area away from cigarette smoke. The staff member response noted that the plaintiff is restricted to a bottom bunk but not to a non-smoking area. Moreover, records produced by the defendants establish that the plaintiff purchased

tobacco products from the canteen at LCI before and after his request to be moved away from cigarette smoke. Thus, the defendants argue that the plaintiff is the one responsible for being subjected to tobacco smoke.

In an inmate grievance form dated August 15, 2002, the plaintiff complained that Gedert refused to provide him medical help when he was in grave pain. This grievance was returned to the plaintiff unprocessed because he did not attempt informal resolution. Not only was Gedert not scheduled to work that day, but the plaintiff's medical records indicate that he received an outside surgical consultation on August 15, 2002, for gallstones, heartburn, and gastroesophageal reflux disease. He also received a prescription for Zantac, an antacid.

In an inmate grievance form dated January 7, 2003, the plaintiff complained that he could not get his medication. In response, the IGC noted that records established that the plaintiff did receive his cream and pain medicine on January 17, 2003.

In a request to staff member dated May 12, 2003, the plaintiff complained that pills for his skin had given him sores on parts of his body. He was advised by the staff member to sign up for sick call to see the doctor.

In requests to staff member dated July 11, 2003, and August 3, 2003, the plaintiff complained that he had not been seen for chest pains when he reported to sick call.

In an inmate grievance form dated December 8, 2003, and a request to staff member dated December 19, 2003, the plaintiff complains that he has not received certain medications. The response to his grievance by the IGC confirms that the plaintiff had received his Metroprolol for December. Indeed, Metroprolol is a beta blocker and it was prescribed for the plaintiff to slow his heart rate and strengthen his ventricles. Records indicate that the plaintiff has been repeatedly noncompliant in taking his medicine and turning in his pill packs for refills. The plaintiff has lupus, an autoimmune disease, and vitiligo, which has been treated orally and topically. He is treated with Prednisone and, for

open lesions, with hydrocortisone cream. When his lesions are infected, he is treated with Doxycycline. For scalp problems, he has been treated with tar shampoo free of charge through the medical unit. He has not received any medication that adversely affected his skin or which is known to have the potential to do so. He is treated for gas discomfort and reflux with simethicone and simetidine, and he has been provided stool softeners for other GI discomfort. He has also been provided Phenylgesic, which is acetaminophen with an antihistamine added as a sedative.

In inmate grievance forms dated April 12, 2004, and April 15, 2004, the plaintiff complains that his chest incision has developed keloid scars. These grievance forms were returned to the plaintiff, and he was advised to present his medical concerns to medical personnel first and to attempt informal resolution. The plaintiff also filed a request to staff member dated April 21, 2004, complaining about his keloid scars. The medical records and Palmer's affidavit establish that after his bypass surgery the plaintiff developed vasculitis of the internal mammary artery and inflammation due to the sternotomy incision, which are painful but common after bypass surgery. They are treated with pain relief medication and non-steroidal anti-inflammatory medications, which the plaintiff received in the form of Ultram and other medications. He also developed external scars on his incision site, which appears as puffy scar tissue over the site of incision. Palmer has not observed the plaintiff indicate signs of pain with these scars. The incision scar is intact and the keloid scars are intact with no broken skin. Nevertheless, the plaintiff has been prescribed pain medications to address skin discomfort.

Contrary to the plaintiff's allegations, the record evidence simply does not support a claim of deliberate indifference to serious medical needs. The plaintiff has failed to show that he had any serious medical need to which the defendants responded with deliberate indifference. Rather, his complaints were treated every time he complained. There is no evidence that he was ever denied examination or treatment when he requested

it, except for the removal of the teddy bear and not moving him away from an area with cigarette smoke. Medical evidence, however, did not support the need for these requests. Moreover, there is no showing that the plaintiff suffered ill effects from the denial of either of these requests. Consequently, summary judgment as to this claim is appropriate.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, it is recommended that the defendants' motion for summary judgment be granted. All pending non-dispositive motions will be held in abeyance pending the district court's disposition of the motion for summary judgment. Should the district judge adopt this court's recommendation, the motions will be rendered moot.


                                                  s/William M. Catoe
                                                  United States Magistrate Judge

May 10, 2005

Greenville, South Carolina